We have four cases on the calendar this morning. A case from the Court of Federal Claims, a bid to protest case, a patent case from the District Court, a trademark case from the PTO, and a veterans case. The latter is being submitted under briefs and will not be argued. The first case is Palladian Partners v. United States, 2014, 51-25. Ms. Kershner. May it please the Court, the trial court's decision and injunction should be reversed because it erred in failing to dismiss the complaint for Palladian's failure to exhaust its administrative remedies before the SBA Office of Hearings and Appeals, OHA. The Court essentially ruled that exhaustion was not required because it would have been burdensome in terms of time and money for Palladian to participate in the pending OHA proceeding that had been brought by its competitor, Information Ventures. And secondly, the Court… Do we have to address your jurisdictional question as a threshold matter or is the exhaustion of remedies a question that we can address before we get to the jurisdictional question that you raised in your opening brief? The jurisdictional questions are usually addressed before other issues. We have not taken the position that there is a lack of jurisdiction. And I believe we have said in our briefs that certainly the jurisdictional statute is broad enough. Here, jurisdiction is determined by whether you are challenging the term of a solicitation. They are challenging the term of a solicitation. But you did argue below that there was no jurisdiction in the court of claim. No, we did not. You did not? We did not. And you argued in your blue brief. Excuse me? And it's also in your opening brief. No, we did not argue lack of jurisdiction. We argued that they failed to state a proper claim because they had failed to exhaust their administrative remedies. Okay. Proceeding then. The trial court's ruling on the exhaustion of administrative remedies question is erroneous. It's erroneous because both points that were relied upon are in error. As the Supreme Court stated in the Orban Regional Medical Center case, an agency has the authority to promulgate regulations governing administrative procedures. Getting right down to it. 121-1102 is what you're relying on, isn't it? Excuse me? Section 121-1102. That's the exhaustion provision. The OHA-OHA, as you say, appeal is an administrative remedy that must be exhausted. It doesn't state by whom. Before judicial review of a code designation may be sought in a court. It doesn't state there by whom either. That's the weakness of your position, isn't it? That is the argument that is being made by Palladian, the principal argument. The government reasonably interprets all the regulations considered as a whole to require administrative exhaustion by all parties. The regulation does not limit its applicability to only certain parties. The regulation 121.1102 that the court cited. Further, the regulations, when you look at the regulations, there is a provision that states that the contracting officer has to stay at the solicitation and give the public notice of the appeal and the procedures and deadline for, quote, interested parties to file and serve their arguments concerning the appeal. Is there a distinction factually between a circumstance in which a party who is not aggrieved by a contracting officer's determination does not intervene and a circumstance where someone is clearly aggrieved by that determination and still fails to intervene? Certainly those are different circumstances. But what here the regulations provide for is that party is defined in 13 CFR 134.101 as, quote, a petitioner, appellant, respondent, intervenors, and the contracting officer. And then further in 121.1103C2i, the contracting officer gives notice of the proceeding and of the deadline for all interested parties to file and serve their arguments. And the regulations further require that parties will present their arguments to OHA and OHA will address their arguments. What I'm trying to understand, though, is do you define interested party as someone who simply wants to support the contracting officer? Because in this particular instance, wouldn't it be logical for someone to say, all right, someone else appeals, but the contracting officer is going to defend the determination? Certainly the definition of party includes a party that wishes to support the contracting officer. And parties that support the contracting officer's views regularly participate in OHA proceedings. The regulation is clear that it covers anyone that wants to support the contracting officer's view as well. And couldn't they have preserved their ability to appeal here by simply filing a single piece of paper that just says we want to be on record that we agree with the contracting officer and his brief in this case? And then that alone would have entitled them to the Sikh judicial review if that position wasn't adopted. They could have exhausted their- I guess I'm going to the point of burdensomeness. The lower court held part of the reason that she would not apply administrative exhaustion the way the government sought to apply it, which I think is the standard way in which it applies, is because to do so would be burdensome on small parties, forcing them to engage in litigation and reviews. And I guess my point is, isn't there a very not-so-burdensome way they could have preserved this right? They could have preserved their right to judicial review by participating, by filing a letter. I'll note that the OHA proceedings are paper proceedings. They don't have any oral argument. They don't have any hearings. But a Me Too letter would have been sufficient, right? The government doesn't dispute that had they filed a Me Too letter, we expressly support the contracting officer's original position, that that would have been enough to allow them then to seek judicial review, right? Isn't that the case? They would be entitled to judicial review in that case. Further, the regulations and OHA precedent, at what point would they be entitled to judicial review? I'm just curious as to how this works, because the contracting officer, when there's a new code that's chosen, still has to go back and make some initial determinations before the contracting officer enforces the OHA decision, right? The OHA decision is issued, and that is final agency action for the SBA. Now, the contracting officer then, depending upon the decision, if the decision is adverse to the contracting officer, the contracting officer is obligated to then amend the solicitation, which is what he did in this case. And at that point, the lady and some other contractor could bring an action in the Court of Federal Claims, providing that they had participated before OHA. Okay, but it would be after the contracting officer amends the solicitation. I think that makes eminent sense. Okay. And what I was just going to say before that, though, is that the regulations contemplate and precedent contemplates, establishes that there is only one proceeding, only one OHA proceeding on the merits of the code. So there is really only one opportunity for any party to participate and to have its views heard by OHA and addressed by OHA. And there's no motion for reconsideration in this context? No, no motion for reconsideration. And the precedent recited in our brief, pages 19 to 20, OHA precedent establishes that any OHA decision is controlling in the case of a subsequent, should someone bring a subsequent proceeding, the earlier decision controls. That would be the integrated systems case from OHA 2005, going as far back as all state maintenance from 1990, that precedent was established. Our interpretation of OHA's regulations is a reasonable interpretation that is entitled to this court's deference. And it is also consistent with general principles of administrative law. General principles of administrative law recognize that a party's failure to participate is a failure to exhaust the administrative remedies. And they also recognize that agency decision making is enhanced where interested parties present their facts and arguments to the agency and the agency has the opportunity to address them. The court's second error was in faulting the contracting officer for failing to implement the OHA's decision. Recited in our brief at pages 24 to 25, various court of federal claims decisions, which recognize that once OHA has issued a decision, the contracting officer, and if it is adverse to the contracting officer, and if it is also issued prior to the time the offers are due, the contracting officer then must implement the OHA decision. Could the court of federal claims have said that the OHA decision was arbitrary and capricious? Excuse me? Could the court of federal claims alternatively have said that the OHA decision was arbitrary and capricious? Assuming Palladian had exhausted its administrative remedies, then we think the proper way for the court to go about its relationship with OHA was to review the OHA decision, and if it had been exhausted, and if it concluded that OHA was arbitrary and capricious, for it to so state and to reverse the OHA decision. I did just want to state that also the comptroller general in the Eagle Home Medical Corporation case has also pointed out that the agency is obligated to adhere to the OHA decision in the circumstances that I indicated, which was the case here. The court's third error was going beyond the record that was before OHA and not giving sufficient deference to the OHA decision. But we don't get to that if we agree with you on exhaustion, right? Correct, correct. But I'd just like to say briefly that on the merits, OHA's view of this standard, of this code, was fundamentally different from the court's view. OHA cited to its precedent and indicated that it had understood this code as being much broader and that it covered basic administrative services. For example, here the contractor was acting as a coordination center and coordinating the whole process of developing these case scenarios. Thank you very much. We will reserve it for you. Mr. Chud. Thank you, Your Honor. May it please the court, my name is Daniel Chud. I represent the pleading partners with me today. Damian Sasaki is also representing the pleading partners. We ask this court to affirm the judgment of the Code of Federal Claims. I originally had wanted to address two issues, both exhaustion and the jurisdictional issue, because I do think that the jurisdictional issue, especially with respect to the OHA decision, can resolve any of the concerns that the DOJ may have and the government may have about the contracting officer's discretion or their argument of the lack of discretion of the contracting officer. I'm also happy to discuss any other... Well, if you both agree that there's jurisdiction, then why does the jurisdictional issue change anything? Well, I think the reason that the jurisdictional issue could change things from the perspective of the briefs in this matter is that the court below accepted jurisdiction only with respect to the contracting officer's decision and did not reach the jurisdictional issue of whether or not the Code of Federal Claims had jurisdiction over the OHA. I agree now that both parties agree, and below I think both parties agree that the term in connection with a procurement would include both the contracting officer's action and the OHA action. And I think from a fair reading of the court's decision, you also know what the court's decision would be with respect to the arbitrary and capricious nature of the OHA decision itself. So you think that resolves the question of whether she could call the contracting officer arbitrary and capricious for enforcing something that by regulation is required to enforce? I think it would resolve that issue because the decision is saying that he was arbitrary and capricious, the contracting officer was arbitrary and capricious for following this decision, which was arbitrary and capricious, because Judge Horne only reached the merits of the jurisdiction of the contracting officer and didn't reach the OHA opinion, then there does become this bit of a quagmire as to whether or not the contracting officer actually had discretion simply to change the NAICS Code. We would argue that he has discretion to do other things. But if you went to the heart of it and went back to the OHA opinion and said because the OHA opinion itself could be reversed or appealed and reversed and considered arbitrary and capricious, then there wouldn't be a need to reach the issue of what the contracting officer... So we accept that proposition, though that doesn't change the at least argument that you had an obligation to exhaust even as it relates to the OHA opinion. No, I think the exhaustion issue is a separate issue from jurisdiction. That's correct. Okay, so let's turn to that. When I first looked at this, I thought one of your strongest arguments was why should you have to participate in an appeal if you're happy with what the number is and you know the contracting officer is going to defend his position on appeal. And yet, when you dig into it, you weren't so happy with the original decision. You actually argued that some third code provision is most appropriate. So doesn't that even change at least the equities of the argument that you're trying to make? Well, I think we're happy with the original code because that original code allowed affiliate partners to compete. It was a code for all small businesses with fewer than 500 employees. But you don't argue that it's accurate. We don't argue that it's the best code. And that's what the RFP actually, or what the requirements actually require and regulations require is that the best code be provided. But these codes, it's not like one code says 500 employees and another says 450. They're into specific categories. So you look at the code and you say, okay, we qualify under this, but it's going up on appeal and we don't actually think it's the best code. So our safest bet is to participate in the appeal. I don't know that, I think that gives a lot more credit to the thought process that went into whether or not to appeal. So I personally don't know why Palladian did not intervene at the time. I do think that had we intervened, or had Palladian intervened though, from the perspective of what's going to be in the best interest of Palladian at that time, best interest likely would have been to support the government's position because that was the contracting officer saying this is the code and we were happy with that code. And for any other potential offers that were out there and hadn't decided whether or not to compete on the solicitation, then it could have led to even harder issues for them because they would have had to decide whether or not to intervene before having decided whether or not to even compete for the contract itself. Well that's what these pre-bid appeals always are in that circumstance, aren't they? Well, I don't think that they are because an interested party at the Court of Federal Claims needs to be a prospective bidder or prospective offeror. And so, again, there would be no real reason for a party to go to the Court of Federal Claims if they hadn't decided whether or not to bid yet, but they'd have time. But the whole point of this pre-solicitation process of determining the proper code is to make sure that when the bid goes out, it goes out right. I mean, we've got a mechanism to allow the government to avoid as many hiccups or problems in the bidding process as they can, right? Right. So isn't the point that you sort of have to make an initial decision about whether you might want to bid once the solicitation goes out? Well, you certainly have to decide once the solicitation goes out whether or not to bid. The solicitation could provide 3, 6, 9 months to actually draft the proposal, and so there's going to be a decision-making process when a solicitation is issued by a company of, is this an opportunity that we want to pursue? Is this an opportunity that we have the ability to pursue? And that process of simply deciding could take a while. Meanwhile, from the perspective of an OHA appeal, that original OHA appeal has to be filed within 10 days of the solicitation being issued, and so long before bids are actually due. And then it's a, I believe, a 15-day period after the notice goes out that anyone who would like to participate, and the regulations are clear, by the way, that they say parties may participate. It's a voluntary statement in the regulations. Anyone who would like to participate then has 15 days to file a request. But the fact that exhaustion is required isn't voluntary, right? Well... It's clear in the regulations that at least the government believes exhaustion is required. The government certainly thinks that exhaustion is required. I don't believe that the 1102 language says that exhaustion is required by every single party. It's akin to a situation where the RFP is actually the party. The RFP is what is being resolved and decided by the SBA OHA. In other words, your view is that exhaustion was satisfied, the issues were raised. The issues were raised, and the issues were not simply, was the 611 code correct or was the 172 code correct? The issue, as OHA itself defined it, is what is the best code for this particular procurement? And so when Polladian Partners actually did file a new protest of Amendment 3, the OHA dismissed that saying these are the identical issues, i.e. what the NIACS code is that's required for this procurement. But the fact is that Polladian didn't exhaust its remedy. I don't... Polladian did not intervene. I don't know that Polladian has a requirement to exhaust its remedy because the remedy is the same. The OHA is looking at the same issue. OHA is looking at the same question no matter what. And this gets into some extent to what sort of exhaustion the government is looking for here. Judge Mohr asked the question earlier about would simply filing a paper be sufficient? And I think this may have been the first time that the government has said, well, yeah, that would be sufficient. But then in the briefs and later in the argument, the government has said, well, it's important to exhaust because you need to hear from everyone what their arguments and facts are. Well, that's because we want the agency to have the ability to have all the arguments before it to make the best possible decision. So if you filed a Me Too brief, you wouldn't get in the judicial proceeding to be able to raise new and different arguments and new and different facts. That much I'm sure the government would agree with and that would be their position and that would seem to make sense. If you don't raise an issue before the administrative body, you're pretty often and almost always precluded from raising it in the judicial process. Well, I'd actually argue here that this is far more a situation of remedial exhaustion as opposed to issue exhaustion. And actually the Sims case that the government has cited to in its brief is an example of this. In that case, the court was looking at the administrative action of the Social Security Administration and it was challenged on an issue of issue exhaustion. There was no question in that case that the individual party had exhausted by going to appeal and going to the council. But there was a question of whether or not they had raised all of the issues at the time. And what the court in Sims said was that the SSA process was a far more inquisitorial process than adversarial process. And some of the touch points for the reason why was because the ALJ had a duty to investigate all facts and develop arguments both for and against granting benefits. The commissioner had no representative before the ALJ. It permitted but didn't require filing a brief with the council. And the council is supposed to evaluate the entire record to include new and material evidence. And there's a short form to request review. That's actually very similar to the regulatory scheme that's set up with respect to OHOP. An OHOP protester who doesn't think the code is correct doesn't need to suggest any other code. The OHOP protester himself can merely say, we don't think that this code is proper. But even if it's true that we're only talking about remedial exhaustion here, Judge Moore's basic point which is that it is not a substantial amount of paper that you have to submit. I mean the regs tell you exactly what to submit. That remains true, does it not? It would be true that to submit, a party that would like to submit would only, or would like to intervene, initially only needs to file a letter saying we would like to intervene. And what the regulations say is that parties may intervene and the OHOP judge may grant the intervention on whatever terms the OHOP judge would like to. I'd also like to point out that the difference here in terms of the by whom aspect of this regulation is important. Because it's a plain reading issue and when Congress and other agencies have wanted exhaustion by particular parties, they know how to ask that. So in Sims, there was a specific regulation to require that any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, may obtain a review of such decisions by a civil action. Booth versus Turner said that no action shall be brought with respect to prison conditions under section 1983 of this title by any prisoner confined in any jail, prison or other correctional facility until such administrative remedies are available as exhausted. And in Theodoropoulos versus INS, it again said that the alien has exhausted all administrative remedies. So I think in this situation, the plain language is important. And when agencies and regulatory bodies and Congress would require that individuals, each individual person or party exhaust, then they can write it in that way. Here, the individual fact, who Palladian is, what Palladian does, is really immaterial to the question that OHOP was answering, which is we have an RFP here, we have a solicitation and we have a set of NIACS codes in this manual and which of these NIACS codes best fits the procurement. Even if we agree with your position that the language might be a bit ambiguous as to whether an individual would have to exhaust or it merely is a question of allowing OHOP an opportunity to assess it, there's still a question that given that kind of ambiguity, that there's some deference that has to be given to the agency for purposes of assessing how you resolve it. Well, I think the first question is whether or not it's ambiguous, and we would argue it's not. But with respect to the deference that's given, deference may be given even in litigation to agencies that are interpreting, but that's only given where it's not part of the litigation position of the agency. Here, the government is really representing two agencies, it's representing both HHS and SBA, and with respect to SBA's interpretations of its regulations, all it's really said is we won't reconsider issues that have been raised with respect to their own OHOP. SBA itself hasn't actually weighed in on whether a party not represented at an OHOP can go to the Court of Federal Claims. They haven't answered the question about the Court of Federal Claims. They've only done it with respect to OHOP, and otherwise, the interpretation that we've seen here today is that something that benefits the government's position, and so it shouldn't be— As you can see, Mr. Chod, your time has expired. Do you have one final thought? Perhaps you've exhausted your point. I would only add that the key case to what I was just referring to is Bowen v. Georgetown University Hospital. I say this because it's not in the briefs, and that's 488 U.S. 204 at 212. Thank you very much. Thank you. Ms. Kirshner has a couple of minutes, just under three minutes for rebuttal. With respect to the exhaustion question, Palladian raised numerous arguments in court that were never presented to OHOP in the proceeding that was brought by Information Ventures. For example, it posed a different code, and it argued that the code picked by OHOP was improper precisely because Palladian was suggesting a different code, that code being the Internet Publishing Code. It also made other arguments that the code chosen by OHOP was incorrect because it did not fit within any of the illustrations, any of the examples. That argument also was never presented to OHOP. And then it also made arguments based on other solicitations and arguments based on OHOP precedent that were never presented to OHOP. All of this could have been addressed by OHOP if it had been properly presented to OHOP by Palladian in the proceeding. With regard to the question of deference, here the government's interpretation of the OHOP regulations is a reasonable interpretation. OHOP is the final decision maker. OHOP is the SBA in this proceeding. The argument I hear is some attempt to put a division between OHOP and SBA. That's not correct. OHOP is the SBA and makes the final decision for the SBA. Here the regulations have been reasonably interpreted by the government and that interpretation is entitled to deference. And as I said, it is consistent with the language of the regulations, consistent with the multiple provisions of the regulations that require that there be notice to all interested parties and that parties include simply someone who has an interest. They don't even have to be an intervener. And our interpretation is consistent with general principles of administrative law. Further, this court has given deference to positions of the government that are taken in litigation. And there's no argument that deference should not be given just simply because this is the first time this issue has arisen. Thank you, Ms. Kershner. We'll take the case on review.